BARBARA A. RAINEY, Plaintiff-Appellee, v. THE CITY OF SALEM, Defendant-Appellant.

Fifth District   No. 5—90—0198

Opinion filed February 28, 1991.—Rehearing denied April 4, 1991.

Stephen W. Thomson and Charles C. Compton, both of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellant.

James H. Cooksey and David Foreman, both of Crain, Cooksey, Veltman & Miller, Ltd., of Centralia, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Barbara Rainey, brought a negligence action in the circuit court of Marion County to obtain damages for personal injuries she sustained when her automobile collided with the rear of a street-cleaning machine owned and operated by defendant, the City of Salem (the City). Following a jury trial, a verdict was returned in favor of plaintiff and against the City. The jury determined that the total amount of damages suffered by plaintiff as a proximate result of the collision was $226,000. However, the jury also found that plaintiff was 25% contributorily negligent. Plaintiff's damage award was therefore reduced to $169,500. The circuit court entered judgment on this verdict and denied the City's post-trial motion. The City now appeals. We affirm.

The evidence, when viewed in the light most favorable to plaintiff, the prevailing party, established that at approximately 1:30 p.m. on May 9, 1988, plaintiff was driving through the City, heading west on U.S. Route 50, also known as West Main Street, near the intersection with Delmar Street. In this area, Route 50 is five lanes wide. There are two eastbound lanes, two westbound lanes and a center turning lane. Plaintiff was driving in the inner westbound lane, i.e., the one closest to the center turning lane. The day was bright and sunny, the pavement was dry, and the road ahead was straight and level.

At the time, plaintiff was returning to her job as the parts department secretary for Fabick Tractor Company after taking her sick daughter home from school. Although the point was disputed, plaintiff's witnesses described the traffic as heavy. Uncontradicted testimony indicated that plaintiff attempted to pass slower-moving traffic ahead of her by moving into the outside westbound lane, that is, she executed a pass on the right. In so doing, plaintiff proceeded at speeds near or in excess of the posted limit. Upon entering the outside lane, plaintiff drove directly into the rear of a street-cleaning machine owned and operated by the City. As a result of this collision, plaintiff sustained serious personal injuries and had to be removed from the scene in an ambulance. Both of her ankles were broken, some of her teeth were knocked loose, she hit her head on the windshield and she sustained various facial cuts.

The evidence showed that there were no skid marks on the pavement. No witness reported hearing plaintiff's brakes squeal. No one reported seeing her attempt to stop or to drive around the street-cleaning machine before she ran into it. These circumstances suggest that plaintiff simply failed to see the street cleaner when she executed her passing maneuver. Neither party suggests otherwise. The real dispute in the case centered on why plaintiff failed to see it. Plaintiff herself could not answer this question. Her injuries caused her to develop amnesia, and she was unable to recall any of the details of the collision.

At first blush, one might think that the unit would be difficult to miss. Known as an Elgin Whirlwind, the street cleaner was essentially a water tank truck with large, motorized brushes mounted beneath it. Its size was massive. According to the City's public works director, it measured eight feet wide and was 18 to 20 feet long. It was also quite tall. One witness placed its height at 9 to 10 feet, while another said it was over 13 feet tall. In addition, the unit was equipped with numerous lights, including headlights, taillights, flashers, bar lights, and two strobe lights. According to City policy, the strobe lights and flashing lights were required to be turned on whenever the machine was in oper-

ation sweeping the streets, even during daylight hours, in order to warn traffic that it was moving slowly.

Delbert Wimberley, operator of the street cleaner, testified that he was cleaning the streets at the time of the collision, that before beginning the street cleaning he had inspected the lights and observed that they were all on, and that he had never turned them off. Greg Miller, the Illinois State Police officer who investigated the accident, corroborated that when he arrived on the scene all of the machine's lights were in operation. That the lights were in use was also confirmed by Ronald Standley, who had observed the street cleaner for several minutes prior to the collision and witnessed the accident itself. Wimberley, Miller and Standley were each called to testify by the City.

Plaintiff relied on a different set of occurrence witnesses, including James Rice, a part-time City employee who was a close friend of plaintiff's sister and formerly attended plaintiff's church; Rebecca Wilmuth, Rice's daughter; Chris Tanner, a sergeant with the City police department and one of plaintiff's neighbors; Penny Henson, a secretary in plaintiff's attorney's law office; and Gene Garrison, a friend of plaintiff's parents. Wilmuth, Tanner, Henson and Garrison all testified that they could not see the lights, but none asserted that the lights were not, in fact, turned on. Only one witness indicated that the lights were not in operation and that was James Rice.

To explain why she failed to see the street cleaner under the foregoing circumstances, plaintiff argued that the unit was enshrouded in an enormous cloud of dust. This point was vigorously contested. The only one of plaintiff's occurrence witnesses to testify that the street cleaner's lights were not in operation, James Rice, stated that when he saw the street cleaner shortly before the accident, it was not enshrouded by a large cloud of dust and that there was, in fact, very little dust.

Rice's testimony was confirmed by defendant's occurrence witnesses. Ronald Standley stated that in the 10 minutes prior to the accident he did not see a cloud of dust engulf the machine, nor did he observe any significant amount of dust arise when the collision took place. Delbert Wimberley, the driver of the street cleaner, related that as he was sweeping the street, he was spraying it with water and that there was very little dust. Greg Miller, the Illinois State Police officer, likewise stated that when he arrived on the scene he did not see any dust blowing. He also stated that he observed no excavation or piles of dirt which might have provided a source for blowing dust.

This version of events was sharply contradicted by various witnesses called by plaintiff, whose testimony the jury evidently found to be more credible. For example, Gene Garrison reported seeing what looked to

him like an "explosion of dust." Penny Henson reported seeing a large cloud, although she did not know that it was dust. She thought that it might be smoke from a fire. Henson described the cloud as being so thick that plaintiff's automobile disappeared as it drove into it. In addition, a cloud of dust was reported by Rebecca Wilmuth, who was driving in the opposite direction of plaintiff, and by the City police sergeant, Chris Tanner, who was on routine patrol in the area at the time. Tanner testified that he was driving behind the sweeper before the collision and that it was generating a cloud of dust at that time. According to his testimony, the dust was evidently not so heavy that it completely obscured the street cleaner, and when he approached the cleaner, he was able to see it and to drive around it. This, however, happened before plaintiff arrived on the scene, and the jury could have concluded that conditions subsequently deteriorated.

As submitted to the jury, plaintiff's theory of recovery was that the City had a duty to exercise ordinary care for her safety when it was cleaning the street. Plaintiff asserted that the City breached this duty in one or more of the following respects:

"a) In operating its [street-cleaning] machine without the use of the machine's lights.

b) In operating its machine under road and weather conditions that caused it to become enveloped in dust and debris and to be hidden from the view of drivers approaching it from the rear.

c) In operating its machine on the public roadway at an inappropriate time because of the high amount of vehicular traffic."

Plaintiff further claimed that "one or more of the foregoing was a proximate cause of her injuries."

As we have indicated, the jury ultimately returned a verdict in favor of plaintiff, although it found that she was 25% contributorily negligent and reduced her recovery accordingly. The circuit court entered judgment on the jury's verdict and denied the City's post-trial motion. The City now appeals. As grounds for its appeal, the City first argues that the judgment should be reversed because plaintiff's complaint failed to state a cause of action. This argument is without merit.

In the trial court, no motion to dismiss for failure to state a cause of action was filed, and the City raised absolutely no objection to the sufficiency of plaintiff's complaint. Although there are cases which indicate that the "failure of a complaint to state a cause of action is a fundamental defect which may be raised at any time by any means and cannot be waived" (*Morrison v. Forest Preserve District* (1987), 155 Ill. App. 3d 687, 689, 508 N.E.2d 312, 313), the rule is actually not so expansive. In fact, the sufficiency of a complaint may be raised for the

first time on appeal only where the complaint wholly fails to state a cause of action (*Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 444, 470 N.E.2d 1083, 1088), *e.g.*, where damages are sought based on a theory of recovery which has not been recognized in this State (see *Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 63-64, 435 N.E.2d 780, 782-83). This is not such a case. Here, plaintiff's complaint plainly sought to impose liability on the City based on its negligence in cleaning the street. Our supreme court has long recognized that where, as here, a municipality undertakes to clean the streets, it is liable for any injury caused by the negligence of its employees in performing that function. *Roumbos v. City of Chicago* (1928), 332 Ill. 70, 83-84, 163 N.E. 361.

■ The City next asserts that the circuit court's judgment must be set aside because under the evidence presented to the jury, the City owed no duty to plaintiff as a matter of law. This argument is likewise without merit. In the trial court, the City did not dispute that when cleaning the street as it did, it had a duty to exercise ordinary care for the safety of plaintiff. The jury was so instructed, and we find nothing in the record to indicate that the City objected to that instruction. In addition, the City did not contest the existence of a duty in its post-trial motion. Supreme Court Rule 366(b)(2)(iii) (107 Ill. 2d R. 366(b)(2)(iii)) specifically states that a party "may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." Under this rule, the failure to include a point or issue in a post-trial motion precludes consideration of that point or issue on appeal. (*Roman v. City of Chicago* (1985), 134 Ill. App. 3d 14, 18, 479 N.E.2d 1064, 1067; *Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 182, 542 N.E.2d 402, 409.) The question of duty has therefore been waived.

■ For similar reasons, we reject the City's contention that it should be granted a new trial because of supposedly prejudicial remarks made by plaintiff's attorney during closing argument. The City's attorney made no objection to those remarks at trial and did not mention them at all in the City's post-trial motion. Where, as here, allegedly prejudicial remarks made by opposing counsel at trial are neither objected to at trial nor raised in a post-trial motion, any error pertaining to those remarks is deemed waived for purposes of appeal. (*Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563, 576, 451 N.E.2d 992, 1002.) No exceptions to this rule are evident in the record before us.

The City also argues that it should not have been held liable because none of the acts or omissions alleged by plaintiff were a proximate cause of her injuries. In the alternative, the City contends that the jury should have found plaintiff more than 25% contributorily negligent. Indeed, the

City argues that the jury should have found that the contributory fault on the part of plaintiff was more than 50% of the proximate cause of the injury or damage for which she sought recovery and that plaintiff should therefore be barred from recovering any damages pursuant to section 2—1116 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116).

The standard of review as to these points is well established. A jury's finding on the issue of comparative negligence will not be set aside on review absent a finding that the verdict is contrary to the manifest weight of the evidence. (*Shiner v. Friedman* (1987), 161 Ill. App. 3d 73, 85, 513 N.E.2d 862, 868.) Likewise, a jury's determination that conduct by the defendant is or is not a proximate cause of injury will only be reversed if it is contrary to the manifest weight of the evidence. (*Cherry v. McDonald* (1988), 176 Ill. App. 3d 471, 482, 531 N.E.2d 78, 84.) A verdict cannot be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony or because the reviewing court would have reached a different conclusion if it had been the trier of fact. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412-13, 476 N.E.2d 1232, 1236.) A verdict is contrary to the manifest weight of the evidence only where, upon review of all the evidence in the light most favorable to the party who prevailed at trial, an opposite conclusion is clearly apparent, or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 156, 507 N.E.2d 1213, 1227.) Such is not the case here.

The City's attack on the jury's verdict is premised in large part on the proposition that plaintiff was simply not looking where she was going, that she did not keep a proper lookout as she changed lanes and moved behind the street cleaner, and that she would therefore have run into the street cleaner regardless of whether the cleaner's lights were operating or a cloud of dust was present. The City calls this conclusion "inescapable," but we disagree. In our view, the evidence was such that the jury could reasonably have concluded that plaintiff was watching where she was going, but that dust generated by the operation of the street cleaner was so dense that she was simply unable to see that the street-cleaning machine lay ahead of her.

We cannot dispute that upon observing the cloud of dust, plaintiff should have exercised more care than she did. As we have indicated, the evidence suggests that plaintiff made no effort to slow down or to avoid the dust cloud, but simply drove straight into it at speeds approaching or in excess of the posted limit. This was certainly negligent

on her part, and in its verdict, the jury so found. On the other hand, the evidence established that plaintiff was driving along a stretch of urban highway in a busy part of town at a time of day, following the lunch hour, when traffic was still substantial. This is not a set of circumstances under which one might reasonably expect a municipality to be engaged in street-cleaning operations. Moreover, the testimony of eyewitnesses suggested that the traffic was proceeding at normal rates of speed. There was no traffic jam and no line of cars which might signal the presence of slow-moving vehicles ahead. The magnitude of the peril presented by the dust cloud was therefore far from obvious. Under the circumstances, we see no basis for second-guessing the jury's assessment of contributory fault at only 25%.

The City raises various other arguments, but the only one which we believe merits further discussion is the City's claim that the jury's award of medical expenses was excessive. In its verdict, the jury found that plaintiff's past and future medical expenses would total $50,000. The City does not dispute that plaintiff's past medical expenses amounted to $26,314.55 or that she would incur $400 in future dental expenses. However, the City claims that there was no proper evidentiary basis for the additional $23,285.45 in medical expenses included in the jury's verdict. Again we disagree.

The evidence presented at trial established that plaintiff sustained serious injury to both of her ankles as a result of the accident. Her recovery from these injuries was good. However, her orthopedic surgeon, Dr. Coss, opined in his video deposition that because of the fractures in her ankles, there was a possibility that she might develop avascular necrosis. According to Dr. Coss, that condition occurs as a result of disruption of the blood supply to the ankles. He explained that if sufficient blood supply disruption occurs, "then up to several years or even longer following injury, the possibility of death of the bone tissue of the bearing surface of the ankle can take place with deformation of the bearing surface and a very severe form of arthritis."

Dr. Coss further opined that plaintiff would have to undergo periodic medical examinations to check for the development of this condition, and that if the condition appeared, it would constitute "a major problem and various sorts of salvage-type surgical procedures might have to be performed." In addition, Coss stated that there was a possibility that plaintiff might suffer post-traumatic arthritis in her left ankle and that she was "at major risk for the development of a post-traumatic arthritis in the right ankle." Indeed, he stated that "the expectation of some degree of post-traumatic arthritis *** is inevitable." According to Dr. Coss, where severe degrees of arthritis of the ankle appear, fusion,

which he defined to mean "freezing" the ankle by surgery, "occasionally has to be carried out."

The City asserts that this testimony should not have been presented to the jury because it was based on mere surmise or conjecture, and not a reasonable degree of medical certainty. This is not so. When Dr. Coss was asked to render his opinions, counsel specifically instructed that all his answers were to be given "to a reasonable medical certainty," and compliance with this standard appears to have been implicit in Dr. Coss' responses. The City made no objection to Dr. Coss' medical testimony, nor did it offer any evidence of its own to refute that testimony. Under these circumstances, we see no reason why the jury's finding as to damages should be disturbed.

Finally, the City assails the jury's assessment of future medical expenses because no expert testimony was given as to what the dollar amount of those expenses is likely to be. Such evidence was not required. The absence of direct evidence as to any particular amount of damages is not by itself a sufficient reason to attack the jury's verdict on damages. Evidence that future medical expenses will be incurred can be inferred from the nature of the disability. If the elements of damage presented for the jury's consideration are proper under the facts of the case, then the assessment of damages is preeminently for the jury, even though reasonable persons could differ as to the amount. *Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 659-60, 518 N.E.2d 205, 218; see also *Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 138, 538 N.E.2d 1236, 1248.

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

RARICK, P.J., and WELCH, J., concur.