DAVID WILLIAMS, Adm'r of the Estate of Terry L. Williams, *et al.*, Plaintiffs-Appellants, v. JERRY L. CONNER, Defendant-Appellee.

Fifth District   No. 5—91—0154

Opinion filed May 7, 1992.

CHAPMAN, J., dissenting.

Appeal from the Circuit Court of Franklin County; the Hon. Robert S. Hill, Judge, presiding.

John D. Drew, of Benton, for appellants.

Charles E. Schmidt, of Brandon & Schmidt, of Carbondale, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs, Terry L. Williams, now deceased, and Olen E. Morgan, appeal from the June 26, 1990, judgment entered by the circuit court of Franklin County on a jury verdict in favor of defendant, Jerry L. Conner. Plaintiffs further appeal from the denial by the circuit court of their post-trial motion on February 4, 1991.

Plaintiffs alleged in their complaints that they were injured on August 8, 1987, as pedestrians when they were struck by an automobile driven by defendant, as they were crossing Illinois Route 154 approximately 57 feet east of Maple Street in Sesser, Franklin County, Illinois. Plaintiffs both alleged that defendant committed certain negligent acts or omissions at the aforementioned time and place and that their injuries were proximately caused by one or more of the specified acts or omissions, stated as follows:

"(a) Failed to keep a proper lookout.

(b) Operated his vehicle at a speed in excess of that which was reasonable and proper with regard to traffic conditions, in violation of Chapter 95½, Illinois Revised Statutes, paragraph 11—601. (See, Ill. Rev. Stat. 1989, ch. 95½, par. 11—601(a).)

(c) Operated his vehicle at a speed in excess of the posted speed limit, in violation of Chapter 95½, Illinois Revised Statutes, paragraph 11—601. (*Cf.* Ill. Rev. Stat. 1989, par. 95½, par. 11—601(a).)

(d) Failed to reduce the speed of his vehicle in sufficient time to allow him to avoid hitting the Plaintiff[s].

(e) Operated his vehicle after dark without having the headlights operating, in violation of Chapter 95½, Illinois Revised Statutes, paragraph 12—201(b). (See, Ill. Rev. Stat. 1989, ch. 95½, par. 12—201(b).)"

Because these personal injury actions arose out of the same occurrence, occurred at the same time and place and involved the same defendant, the circuit court ordered that plaintiffs' individual cases be consolidated for purposes of pretrial discovery and trial, by order entered December 31, 1989. Following the death of plaintiff Williams prior to trial, due to causes unrelated to the personal injury involved in the instant case, David Williams, administrator of the estate of Terry R. Williams, deceased, was substituted as plaintiff.

Plaintiffs raise the following issues on appeal:

(1) Whether remarks of defense counsel and the inferences drawn therefrom were violative of the court's *in limine* order, prejudicing the jury and preventing plaintiffs from receiving a fair trial;

(2) Whether the court erred in refusing to give an issues instruction to the jury and whether the failure to give an issues instruction prevented plaintiffs from receiving a proper trial; and

(3) Whether the jury's verdict was against the manifest weight of the evidence.

We will first discuss whether the jury's verdict was against the manifest weight of the evidence. A verdict is contrary to the manifest weight of the evidence only where, upon review of all the evidence in the light most favorable to the party who prevailed at trial, an opposite conclusion is clearly apparent, or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. (*Rainey v. City of Salem* (1991), 209 Ill. App. 3d 898, 905, 568 N.E.2d 463, 468.) Moreover, this court will not set aside a verdict merely because we would have reached a different conclusion if we had been the trier of fact. (*Rainey*, 209 Ill. App. 3d at 905, 568 N.E.2d at 468.) With this formidable standard of review in mind, we will examine the evidence on which the jury based its verdict.

Defendant testified as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1102). He stated that on August 8, 1987, he had worked the evening shift at his job at the Old Ben Coal Mine, Number 21. Defendant had been the EMT in charge on underground property that night and was returning to his home in Whittington, Illinois, by way of Illinois Route 154, after completing his shift around 11:40 p.m. Defendant took this road into downtown Sesser, Illinois, heading east. Defendant stated that he had not checked his speedometer but believed he was traveling between 25 and 30 miles per hour. Defendant was very familiar with the roadway and businesses in the downtown Sesser vicinity and knew that it was possible that people could cross the street in that area.

Defendant testified that he was approximately 40 feet away when he first spotted Olen Morgan in the middle of his lane in the road and Terry Williams slightly behind him approximately on the center line. He had driven his blue Chevy Nova over a small crest in the road prior to reaching the impact area and stated that on a clear night he would be able to see 200 yards after the crest area. Defendant stated

that it had been raining that night and it was hazy and the roadway was wet. The point of impact was approximately 80 yards after the crest in the road.

Defendant recalled at least one car traveling west on the roadway at this time and this car was just east of plaintiffs at the point of impact. He indicated that the headlamps and other equipment on his vehicle were in good working order on that night and testified that because he parks his car at work facing a building he would have been able to see whether or not the lights had been working when he left work. At no time between leaving work and the point of impact did defendant turn off his headlamps, and he stated that the headlamps were in low-beam position at the point of impact. Defendant admitted that he was nearsighted but stated that the problem was correctable by eyeglasses and that he had been wearing his glasses on the night of the accident. Defendant also testified that there were crosswalks in the area, located at street intersections 50 feet west and 100 feet east of the place where plaintiffs were crossing the street.

Defendant gripped the front wheel and locked his brakes but was unable to avoid hitting both plaintiffs. Defendant stated that he would have been unable to move his vehicle to the left or right to avoid hitting plaintiffs because there was not any time and noted that there were parked cars on the right side of the road. He estimated that his vehicle skidded approximately 60 to 80 feet after he applied his brakes. He skidded both before and after impacting with plaintiffs. His vehicle struck Terry Williams in the left front bumper region and Williams was thrown off to the left. When defendant's vehicle struck Olen Morgan he was thrown onto the hood, hit the windshield and traveled with the vehicle until it was able to stop at which point Morgan rolled off in front of the vehicle.

Kenneth Jeffries testified on behalf of plaintiffs that he had had a couple of beers in the Bank Tavern in Sesser, Illinois, on the evening of August 8, 1987, and left to drive to another bar. He was going to make a right-hand turn onto Route 154 at the stop sign and noticed a car passing that did not have any headlights on and that the car was going faster than normal, about 35 to 40 miles per hour. Jeffries did not know what color or make of vehicle the car was. Another car behind that car passed moments later, but it did have its lights on, and Jeffries stated that he had seen the car with its lights on make a sudden stop. He did not see the impact between a car and plaintiffs and did not see whether it was the car with lights or the car without lights that had struck plaintiffs. Jeffries parked his vehicle and walked over to the area, and he saw that there had been an accident.

He did not talk to the police about the accident but contacted plaintiff Morgan approximately four months later about what he had seen. Jeffries is now married to Olen Morgan's daughter.

Terry Curtis Hutson, a patrolman for the City of Sesser, testified on behalf of plaintiffs. He responded to a call at approximately 11:45 p.m. on August 8, 1987, that there had been an accident. When Officer Hutson arrived at the scene of the accident he observed that there were two bodies lying on the roadway and that the distance between the two was approximately 80 feet. Officer Hutson observed that there were skid marks behind the vehicle that had been involved in the accident between 60 and 70 feet long, which began at the intersection of Walnut Street and followed the vehicle to the point where it had stopped.

Officer Hutson testified on cross-examination that there were no marked crosswalks on the roadway where the accident occurred and that the Walnut Street intersection was about 40 feet away. He also testified, however, that none of the intersections in Sesser had marked crosswalks either.

Linda Lou Eaton testified on behalf of plaintiffs that during the evening of August 8, 1987, she had been working as a barmaid at Wayne's Bar and Grill. Someone came into the bar and asked her to call an ambulance because he had hit two gentleman out front. Eaton testified that when she went outside she observed that there was a blue automobile in the eastbound lane and that its lights were out. She also observed two men laying on the roadway and identified the men as Terry Williams and Olen Morgan.

Eaton admitted on cross-examination that she knew Williams and Morgan and that the two men had been inside the bar just a few moments before. She admitted that at the time she walked out of the bar the ambulance had already arrived. She also admitted that she had not seen the accident so that she had no way of knowing whether the lights on the blue car were on or off at the time of the accident. Eaton further admitted that she is presently employed as a barmaid at "Olen's Bar," an establishment owned by Olen Morgan.

Olen Morgan testified in August 1987 he was employed by S. J. Groves as the 3 p.m. to 11:30 p.m. shift concrete superintendent at the construction site for the Alton lock and dam project on the Mississippi River. After working his regular evening shift on Friday, August 7, 1989, Morgan attended a superintendent's meeting in Alton on Saturday from 9 a.m. until 4 p.m. He went home after the meeting, took a shower and left Alton around 6 p.m. driving to his friend Terry Williams' house in Zeigler, Illinois. He arrived at Williams' house around

8 p.m., and they decided to go to Sesser. They went to Mamma Jo's Lounge in Sesser and stayed there 2½ hours. They left Mama Jo's Lounge about 11 p.m. and went down the street to Wayne's Bar and Grill. Morgan recalled that they stayed at Wayne's about 20 minutes and decided to call it a night and go back to Zeigler.

Plaintiff Morgan testified that as he and Williams stood on the curve outside of Wayne's Bar and Grill, he saw one small car going east but that there were no other cars coming from either direction that they could see. They started to cross the street to get to their car, but when they got into the eastbound lane, Morgan heard a noise from Williams and turned west toward Williams and caught a glimpse of something, but that was all he remembered. Morgan recalled that he was reaching for his keys when he started across the eastbound lane. He did not recall any lights from either direction as he was crossing the street. He did not recall seeing a Volkswagen passing in the westbound lane. He admitted that he could have crossed the street at the corner that night but chose not to.

Defendant testified on his own behalf and presented into evidence a videotape of which he had participated in the making, showing the route he had followed on the night of the occurrence. During the taping he drove the same vehicle he had been driving on the night of the accident.

The evidence deposition of Steve Bundy, a trooper with the Illinois State Police, was presented as part of the defendant's case. Trooper Bundy testified that on August 8, 1987, he was called to investigate an accident that occurred on Illinois Route 154 in Sesser, Illinois. He arrived at the scene on August 9, 1987, at 12:29 a.m. He noted a 1985 Chevrolet Nova, still in the roadway, and that it had obviously been involved in a collision. To his knowledge the vehicle had not been moved following the collision. Bundy spoke both with the police officer from Sesser and a witness, Brian McBride. No other witnesses stepped forward with information about the accident. During the course of this investigation, no one told Trooper Bundy that defendant had not had his headlights on at the time of the accident. Bundy later spoke with plaintiffs, and neither told him that defendant was traveling too fast or that defendant had not had his headlamps on at the time of the accident. Trooper Bundy admitted that when he talked with Morgan and Williams they were incoherent.

Trooper Bundy observed skid marks left by defendant's vehicle at the scene of the accident. The skid marks were located in the eastbound lane of traffic until the very end when the front tire angled off into the westbound lane. At this point it was well beyond the point of

the collision. Bundy noted in his report that the skid marks extended 32 feet 7 inches on the driver's side and 37 feet 10 inches on the passenger side prior to the collision point and thereafter extended 31 feet 5 inches on the driver's side and 34 feet 5 inches on the passenger's side. The total length of skid marks was 69 feet 3 inches on the driver's side and 67 feet on the passenger side of defendant's vehicle. Trooper Bundy noted that the roadway surface was slightly damp due to the rain earlier in the day and stated that this condition would lengthen the stopping distance for a vehicle. He admitted that he was not qualified as an accident reconstructionist to give an opinion as to the speed defendant's vehicle had been traveling at the time it began skidding. Although Trooper Bundy arrived at the scene of the accident after plaintiffs had been taken to the hospital, he noted in his report that Mr. Williams' body had been located 20 feet from the point of impact and Mr. Morgan's body had been located 40 feet 2 inches from the point of impact.

Brian McBride testified on behalf of defendant that he saw the accident which occurred on August 8, 1987. McBride is a student at the University of Illinois and testified that on the night of the accident he and his parents had just returned from a trip to Chicago. He decided to go into Sesser to look for some of his friends. McBride testified that he was driving eastward on Route 154 in a 1983 Volkswagen and turned around at the loop by the railroad tracks to head westward on Route 154 when he saw the accident. He was only going 10 to 15 miles per hour because he had just made the turn around after coming to a complete stop. McBride testified that the roadway was a little slick from rain which had occurred earlier in the evening. He saw the car driven by defendant approach him in the eastbound lane as he saw its headlights come over the crest of the hill. He never saw defendant's headlights go off prior to the impact with plaintiffs. McBride then saw two people walking across the road in front of him about halfway between his car and the defendant's car. McBride testified that the two men did not look when they walked into the eastbound lane, that it appeared as though they walked right in front of defendant's car, and that the impact occurred right after they crossed the center of the highway.

Plaintiffs argue that it is clear from the record that defendant was negligent in this cause and note the length of the skid marks as overwhelming proof that defendant had operated his vehicle at a speed which was clearly unwarranted. Defendant, however, points to evidence in the record that the roadway was damp and that this factor would increase the distance required to stop. Defendant also

points to the testimony of Trooper Bundy that he could not state what speed defendant had been traveling at the time of the accident. We note that defendant testified that his speed was 25 to 30 miles per hour and that the only testimony with regard to speed that was clearly excessive was that of Mr. Jeffries. However, Jeffries was unable to say whether the vehicle he saw traveling faster than normal and without its lights was defendant's vehicle because he admittedly did not see the accident. Jeffries also testified that he saw a second vehicle pass going east on the highway, that this vehicle had its lights on, and that it was this second vehicle that he had seen come to a sudden stop. The jury could reasonably have inferred that defendant's vehicle was the second vehicle which Jeffries had seen. We note that it is the province of the jury as the trier of fact to determine the facts of the case, disputed as well as undisputed, and to draw from these facts the reasonable inferences which they support. *Perry v. Storzbach* (1990), 206 Ill. App. 3d 1065, 1070, 565 N.E.2d 211, 215.

Plaintiffs also cite the testimony at trial that defendant's lights were out at the time of the accident as further evidence of defendant's negligence. This too was an area of disputed evidence. We note, however, that Mr. Jeffries and Ms. Eaton, who testified on behalf of plaintiffs, did not see the accident and therefore could not testify that defendant's vehicle did not have its lights on at the time of the accident. Moreover, while Olen Morgan testified that he did not see lights from vehicles coming in either direction when he and Williams crossed the highway, Morgan admitted that he was reaching for his keys when he stepped into the eastbound lane. In contrast, Mr. McBride testified on behalf of defendant that he had his lights on and saw that defendant also had his lights on prior to the collision and that plaintiffs had crossed in front of him in the westbound lane and then without looking had stepped into the path of defendant's vehicle. In addition, defendant testified that he would have known if his vehicle lights had been out when he started his car to come home from work and presented the videotape of the path his car would have come that night from work eastward through Sesser. Credibility of witnesses and the weight to be given their testimony is also the matter for the trier of fact. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 912, 466 N.E.2d 925, 930.) We believe the jury could reasonably have determined that defendant's and Brian McBride's testimony with regard to defendant's headlights was more credible.

■ Plaintiffs also argue that the introduction of evidence regarding the lack of a crosswalk where they were struck by defendant's vehicle created a "red herring" which was cemented by the giving of

defendant's special interrogatories, over plaintiffs' objection. However, evidence that plaintiffs had crossed in the middle of the street was relevant as to whether the two men had used "ordinary care," and defendant had alleged by way of affirmative defense that it was plaintiffs' own contributory negligence which was the proximate cause of their injuries. We note that by way of special interrogatory the jury responded that defendant was not guilty of negligence which was a proximate cause of the injuries sustained by Olen Morgan and Terry Williams. A jury's determination that conduct by defendant is or is not a proximate cause of injury will only be reversed if it is contrary to the manifest weight of the evidence. *Rainey*, 209 Ill. App. 3d at 905, 568 N.E.2d at 468.

The jury in the instant case was instructed pursuant to plaintiffs'/defendant's instruction No. 6, as to the definition of "negligence":

"When I use the word 'negligence' in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under the circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide." (Illinois Pattern Jury Instructions, Civil, No. 10.01 (3d ed. 1992) (hereinafter IPI Civil 3d).)

We find that the jury's determination on the special interrogatories was not contrary to the manifest weight of the evidence. We also find that upon review of the evidence regarding the issue of defendant's negligence, the jury's verdict was neither palpably erroneous or unwarranted nor the result of passion or prejudice and did not appear to be arbitrary or unsubstantiated by the evidence. In short, the verdict was not against the manifest weight of the evidence.

We next will discuss the issue of whether plaintiffs were denied a fair trial because of certain conduct of defense counsel, contended by plaintiffs to have violated the court's pretrial *in limine* order. Plaintiffs moved prior to trial that defendant be precluded from offering or introducing into evidence at trial questions concerning the intoxication of plaintiffs or evidence of the consumption of alcohol by plaintiffs. Following hearing, the court sustained plaintiffs' motion with respect to the matter of drinking intoxicating liquors or the matter of having the smell of alcohol or intoxicating liquor on the breath of the particular person.

Defendant responds that none of his questions during the trial were in violation of the court's *in limine* order; while defendant inquired as to the whereabouts of plaintiffs prior to the accident and

the location of the accident itself, none of his questions made reference to the use of alcohol. Moreover, defendant contends that plaintiffs' questioning of their own witnesses elicited testimony concerning taverns, and plaintiff Morgan, himself, testified during direct and redirect examination that he and Terry Williams were present at Wayne's Bar and Grill and Mama Jo's Lounge in the few hours immediately prior to the accident. In any event, defendant argues, plaintiffs waived appeal on this issue by failing to object at trial to any of his questions.

Plaintiffs contend, however, that defendant regularly and repeatedly made reference to the use of alcohol by overstating the whereabouts of plaintiffs in drinking establishments that night in order to plant in the jury's mind, by innuendo, that plaintiffs were intoxicated at the time of the accident. Plaintiffs acknowledge that no objections were made to any of defendant's individual questions; however, they explain that while any one question would not suffice to constitute a violation of the *in limine* order, as a whole the order was violated because of defendant's plan to prejudice the jury with the inference that plaintiffs had been drinking.

We do not agree. In order to preserve an objection that certain evidence violates an order *in limine*, counsel must object at trial. (*Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 5, 422 N.E.2d 241, 244.) Moreover, while plaintiffs argue that repeated questions designed to elicit testimony that they were in drinking establishments violated the court's order, we note that this order did not preclude questions as to plaintiffs' whereabouts that night or questions designed to elicit testimony about drinking establishments. In none of defendant's examination of witnesses did he ask whether plaintiffs had consumed any alcohol that night when they were in the various bars and taverns or whether they smelled of alcohol. As noted in *Beasley*, because orders *in limine* limit the jury's access to certain evidence, courts must be certain that orders be specific to preclude introduction of inadmissible evidence while not restricting the opposing party's presentation of its case. (*Beasley*, 97 Ill. App. 3d at 5, 422 N.E.2d at 244.) Any correction or interpretation of the order should be made by the trial court to accommodate these competing interests, and for a reviewing court to benefit from a trial court's interpretation of the order, counsel must object to any evidence or comments allegedly violating the order *in limine*. (*Beasley*, 97 Ill. App. 3d at 5, 422 N.E.2d at 244.) If plaintiffs felt that defendant was repeatedly and prejudicially asking questions which created the inference that they

were intoxicated, they should have asked for just such an interpretation of the *in limine* order. Because they did not, this issue is waived.

Finally, we will discuss whether the trial court erred in failing to give an issues instruction to the jury. Giving or denying a jury instruction is discretionary with the court, and a new trial may be granted for refusal to give an instruction only where serious prejudice to a party's right to a fair trial has been shown. (*Yedor v. Centre Properties, Inc.* (1988), 173 Ill. App. 3d 132, 146, 527 N.E.2d 414, 423.) However, where there is an error in jury instruction but a reviewing court can see from the entire record that no injury has been done, the judgment will not be disturbed. *Palmer v. Palmer* (1988), 169 Ill. App. 3d 828, 831, 523 N.E.2d 1316, 1318.

Plaintiffs tendered an issues instruction as plaintiffs' instruction No. 8 at the instructions conference following the close of evidence. In this tendered instruction plaintiffs stated in pertinent part:

"Each plaintiff claims that he was injured and sustained damage, and that the defendant was negligent in one or more of the following respects:

(a) Failed to keep a proper lookout.

(b) Operated his vehicle at a speed in excess of that which was reasonable and proper with regard to traffic conditions.

(c) Operated his vehicle at a speed in excess of the posted speed limit.

(d) Failed to reduce the speed of his vehicle in sufficient time to allow him to avoid hitting the Plaintiff.

(e) Operated his vehicle after dark without having the headlights operating."

At the conference the court refused this instruction, stating with regard to paragraph (c) above that there was no statute as to this particular duty nor did the common law say that it was negligence to exceed a posted speed limit. The court also noted that while there was a statute which covered the duties stated in paragraphs (b), (d), and (e) of the instruction, plaintiffs failed to state that this conduct was in violation of statute. Plaintiffs asked to retender instructions which were refused at the conference, and the court warned that while it would not have another conference on instructions in the morning, plaintiffs could reoffer those instructions for which the revised form had been agreed upon. Defendant did tender an issues instruction which apparently delineated that plaintiffs were claiming that certain conduct was "in violation of statute." However, defendant's issues instruction was also refused because it contained specific allegations of conduct on plaintiffs' part which defendant was contending constituted contribu-

tory negligence and plaintiffs had pointed out that the affirmative defense on file merely stated that the occurrence described in the complaints was caused in whole or in part by the negligence of the plaintiffs. The court noted that it was important that there should be instruction on the issues and stated that it would give either side a chance to submit an issues instruction. The court also stated that it would look at them but would not reconsider them at large.

The following morning, five minutes before closing arguments were scheduled to begin, plaintiffs retendered, without objection, plaintiffs'/defendant's instruction No. 7 and the court accepted this instruction. However, plaintiffs' instruction No. 8 was retendered with objection of defendant and stated in pertinent part:

"Each plaintiff claims that he was injured and sustained damage, and that the defendant was negligent in one or more of the following respects:

(a) Failed to keep a proper lookout.

(b) Drove his vehicle upon a highway of this state at a speed which was greater than was reasonable and proper with regard to traffic conditions and the use of the highway or endangered the safety of any person. The fact that the speed of a vehicle may not have exceeded the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching a hillcrest or when special hazards exist with respect to pedestrians or by reason of weather and highway conditions.

(c) Failed to decrease speed as may have been necessary to avoid colliding with any person on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

(d) All motor vehicles shall exhibit at least two lighted headlamps showing white lights during the period from one-half hour after sunset to one-half hour before sunrise and at any other times due to insufficient light or unfavorable atmospheric conditions."

The court again refused plaintiffs' issues instruction, noting that while plaintiffs tracked the language in the statute (Ill. Rev. Stat. 1989, ch. 95½, par. 11—601(a)) in their instruction, the instruction included elements of the statute that did not have any application to the facts of the case. The court also noted that certain paragraphs involving statutes did not tell the jury that a statute was involved. Finally, the court noted that there was nothing in the pleadings to set up paragraphs (b) and (c).

Defendant presented a motion for leave to amend his affirmative defense to specify the allegations of plaintiffs' contributory negligence. The court allowed defendant's motion but declined to accept defendant's issues instruction.

■ While it is clear that a litigant has the right to have the jury instructed on his theory of the case (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 724, 504 N.E.2d 781, 786), a party is required to tender a proper instruction and it is not the duty of the trial court to prepare or amend instructions (*Oak Brook Park District v. Oak Brook Development Co.* (1988), 170 Ill. App. 3d 221, 238, 524 N.E.2d 213, 224) or to give an instruction on its own motion. (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 509, 394 N.E.2d 1273, 1280.) Moreover, where a party's instructions incorrectly state the issues in the case, they are properly refused. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 488, 473 N.E.2d 1322, 1343.) It is clear that neither version of issues instructions tendered by plaintiffs was correctly drawn under the court's analysis, and plaintiffs' tendered instruction No. 8 was therefore properly refused. We must therefore disagree with plaintiffs' contention that the court refused to accept the tendered issues instruction on the morning following the issues instruction conference because of time constraints.

The issue, as refined, is whether the court was bound to allow plaintiffs to redraft and resubmit their issues instruction at this point in the trial proceedings. The purpose of the instruction conference is to give counsel an opportunity to object to or correct erroneous instructions. (*DeBow v. City of East St. Louis* (1987), 158 Ill. App. 3d 27, 33, 510 N.E.2d 895, 900.) The conference may be held at any time during the trial within the reasonable discretion of the trial court, provided counsel are informed of the court's action on tendered instructions prior to closing arguments. (*DeBow*, 158 Ill. App. 3d at 33-34, 510 N.E.2d at 900.) The court informed the parties that they could resubmit instructions which reflected necessary changes which had been discussed at the instructions conference prior to closing arguments. The court warned that it would not reconsider instructions at large. We find that the court reasonably exercised its discretion because it gave plaintiffs the opportunity to submit a proper issues instruction. We must now examine whether plaintiffs were prejudiced by the failure to give any issues instruction. As noted above, the court declined to accept defendant's issues instruction.

It is elementary that the instructions should, in a concise and comprehensive manner, inform the jury of the issues presented, the

principles of law to be applied, and the necessary facts to be proved to support its verdict. (*Grover*, 76 Ill. App. 3d at 508, 394 N.E.2d at 1279.) The test is whether, taken as a whole and in series, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law. (*Grover*, 76 Ill. App. 3d at 508, 394 N.E.2d at 1279-80.) We do not dispute that it is the duty of the court to inform the jury of the plaintiff's claims and the defendant's responses. (*Batteast v. Wyeth Laboratories, Inc.* (1988), 172 Ill. App. 3d 114, 138, 526 N.E.2d 428, 444, *rev'd on other grounds* (1990), 137 Ill. 2d 175, 560 N.E.2d 315.) However, our review of the instructions which were given by the court in the instant case indicates that the jury was instructed as to the plaintiffs' and defendant's respective claims, albeit not by way of an issues instruction, *per se.*

The court gave a burden of proof instruction to the jury. In this instruction the jury was told that plaintiffs had the "burden of proving that defendant acted or failed to act in one of the ways claimed by plaintiffs as stated in these instructions and that in so acting or failing to act, defendant was negligent." Negligence was defined for the jury as "the failure to do something a reasonably careful person would do or the doing of something a reasonably careful person would not do under the circumstances similar to those shown by the evidence." The jury was also instructed that it is "the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision." Further, ordinary care was defined for the jury as "the care a reasonably careful person would use under circumstances similar to those shown by the evidence."

Plaintiffs' instruction No. 3 was given and stated:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that every driver of a motor vehicle shall not operate a vehicle at a speed in excess of that which is reasonable and proper with regard to the traffic conditions.

If you decide that the defendant violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, the defendant was negligent before and at the time of the occurrence."

In addition the jury received plaintiffs' instruction No. 6, which stated:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that vehicles operated after dark shall have the headlights operating.

If you decide that the defendant violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, the defendant was negligent before and at the time of the occurrence."

It is clear in our review of the negligence allegations of plaintiffs' complaints that the jury was instructed as to plaintiffs' claims and therefore what plaintiffs needed to prove with respect to the burden of proof instruction. We therefore hold that there was no prejudice to plaintiffs' right to a fair trial. We do not mean to imply by our holding that an issues instruction need not be given in order to properly instruct a jury. Under the facts of this case, however, where the evidence overwhelmingly supported the jury's verdict in favor of defendant and the instructions did inform the jury of plaintiffs' negligence claims, there was no prejudice suffered by plaintiffs by the court's failure to give an issues instruction, and accordingly, the judgment of the court should not be disturbed.

We therefore affirm the June 26, 1990, judgment and February 4, 1991, order of the circuit court of Franklin County.

Affirmed.

LEWIS, HENRY, J., concurs.

JUSTICE CHAPMAN, dissenting:
I agree with the majority's opinion except for their treatment of the issues instruction. The court should have submitted an issues instruction to the jury, and under the circumstances, I would hold that the plaintiffs were denied their right to a fair trial by its failure to do so.

A party has the right to have the jury instructed on its theory of the case (*Zueck v. City of Nokomis* (1987), 160 Ill. App. 3d 140, 145, 513 N.E.2d 125, 128), and the circuit court, in the exercise of its discretion, should instruct the jury on all issues which it finds have been raised by the evidence presented (*Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 310, 562 N.E.2d 282, 287).

The majority opinion includes excerpts from both of the plaintiffs' tendered issues instructions. Basically, these instructions were refused either because they failed to state that the alleged conduct was in vio-

lation of a statute or because they included elements of the statute that had no application to the facts of the case. Defendant's tendered issues instruction, which was also refused by the court, provided in pertinent part:

"Each plaintiff claims that he was injured and sustained damage, and that the defendant was negligent in one or more of the following respects:

(a) Failed to keep a proper lookout for pedestrians crossing the street;

(b) In violation of a statute, drove his vehicle at a speed which was greater than that which was reasonable and proper with regard to traffic conditions then and there present;

(c) In violation of a statute, failed to decrease his speed as may have been necessary to avoid colliding with any person on or entering the highway;

(d) In violation of a statute, failed to have his headlights on during the period from a half hour after sunset to a half hour before sunrise."

This instruction was refused mainly because the defendant did not set forth specific allegations of negligence in his original affirmative defense, thereby precluding him from setting forth particular charges of contributory negligence in the jury instruction. Defendant inquired of the court whether an amendment of his affirmative defense would entitle him to submit his tendered issues instruction to the jury. The court vaguely responded, "I don't want to rule on that here without seeing what it is—that would be handed up."

At the instruction conference the court refused both parties' tendered issues instructions, gave the parties leave to amend the instructions, and recessed the proceedings. Plaintiffs offered to come to court at 9 a.m. the following morning; however, the court instructed the parties to bring their amended jury instructions in at 9:30 a.m., just 15 minutes before closing arguments were to begin. At the 9:30 a.m. conference the next morning, defendant presented a motion for leave to amend his affirmative defense to specify the allegations of plaintiffs' contributory negligence. The court allowed defendant's motion to amend but still refused to accept the defendant's issues instruction.

This is not a case where the parties did not even attempt to satisfy the court's suggestion of what it would accept as a proper issues instruction. After the court rejected plaintiffs' first tendered issues instruction because it failed to set forth the statutes defendant was alleged to have violated, the plaintiffs submitted an amended instruction, incorporating the language of the statutes which defendant was

alleged to have violated. The court also refused this amended version. The defendant's tendered instruction set forth the plaintiffs' alleged theories of negligence and stated that such alleged conduct was a violation of statute. Defendant, in an attempt to cure the court's earlier professed reasons for refusal, amended his affirmative defense. The court still refused to submit the issues instruction to the jury. Based on the circumstances, I believe the parties were improperly denied their right to have the jury properly instructed.

The jury was not fully instructed as to the plaintiffs' claims. The submitted instructions did not apprise the jury of the defendant's alleged failure to: (1) keep a proper lookout for pedestrians crossing the street; (2) decrease speed to avoid colliding with any person on or entering the highway; and (3) drive at a speed which was not in excess of the posted speed limit. Under the facts of this case, plaintiffs were prejudiced by the court's failure to give an issues instruction. Therefore, I dissent.