2020 IL App (1st) 190202
No. 1-19-0202

SIXTH DIVISION
October 16, 2020

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FLETCHER McQUEEN, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAVONTA M. GREEN and PAN-OCEANIC | ) | No. 14 L 1050 |
| ENGINEERING COMPANY, INC., a Corporation, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Pan-Oceanic Engineering Company, Inc., | ) | Honorable Bridget A. Mitchell, |
| Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Presiding Justice Mikva dissented, with opinion.

**OPINION**

¶ 1      After a jury trial, a verdict was entered against defendant Pan-Oceanic Engineering

Company, Inc. (Pan-Oceanic), related to injuries suffered by plaintiff, Fletcher McQueen, as a

result of a vehicular collision between plaintiff and Lavonta Green, who was an employee of Pan-

Oceanic. Pan-Oceanic was ordered to pay $163,227.45 in compensatory damages and costs and

$1 million in punitive damages. The jury did not find against Green. On appeal, Pan-Oceanic

contends that it is entitled to a judgment *non obstante veredicto* (*n.o.v.*) or new trial based on faulty

jury instructions and special interrogatories, inconsistent verdicts, and other issues. Finding that

the verdicts were legally inconsistent and that the errors related to jury instructions prevented a fair trial, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3                                  A. Complaint and Trial

¶ 4      Plaintiff's operative complaint, filed on March 8, 2017, alleged as follows. On August 17, 2012, Green—who worked for Pan-Oceanic—was assigned to pick up a skid steer from Patten Industries (Patten) and take it to a Pan-Oceanic site in Chicago. After agents for Patten loaded the skid steer onto Green's truck, Green observed that the load was crooked and "didn't look right." Green was nonetheless told to accept the load. While driving to the Pan-Oceanic site, Green lost control of his truck and struck plaintiff's vehicle, which injured plaintiff. Count I of the complaint alleged that Green was negligent. Count II alleged that Pan-Oceanic was negligent and stated in part that Pan-Oceanic had failed to properly hire and train Green in various respects. Count III stated that Green and Pan-Oceanic each recklessly disregarded the safety of others, and it sought punitive damages. Defendants admitted that Green was an employee of Pan-Oceanic during the relevant times. There is no dispute that Pan-Oceanic admitted liability for Green under *respondeat superior*.

¶ 5      At trial, Green testified that he started working for Pan-Oceanic in March or April 2012. On the day of the collision, Green was driving a truck with an attached flatbed trailer. He went to Patten, located in Elmhurst, to pick up a skid steer that had been repaired. The usual procedure at Patten was that Green would load the machine onto the trailer himself. This time, however, someone from Patten had to load the skid steer using a telehandler (similar to a forklift) because the required key could not be found. After being loaded, the skid steer looked crooked. Green called his boss, "Salvi," and told him "it didn't look right" or "[i]t looked funny." Salvi then spoke

to someone at Patten, who told Salvi "[i]t was all fine. He can drive it like that. It's safe." Salvi then told Green, "Be safe. Come to the yard." Green began driving and took the expressway to the Pan-Oceanic site. At one point, Green accelerated and observed in his rearview mirror that the trailer was bouncing. Green hit the brakes, whereupon he spun out, lost control, and hit plaintiff's vehicle.

¶ 6 Green did not know that a load could become unstable on the expressway if it was improperly loaded. No one at Pan-Oceanic had talked to Green about what could happen if a skid steer was improperly chained or loaded. Green also stated that he never had monthly foremen/superintendents' meetings that talked about loading tractors and trailers.

¶ 7 Plaintiff testified in part that Green spoke to him right after the collision, telling plaintiff that he hated driving the truck "because it had happened *** two or three times before. It happened to somebody else." Plaintiff also testified about his injuries and medical care.

¶ 8 Gulzar Singh, president of Pan-Oceanic, testified as follows. Pan-Oceanic had monthly trainings for employees about loading and securing equipment, as well as weekly toolbox topic meetings and quarterly safety meetings for all employees. Employees were informed and trained that they could lose control of a load if it was unstable. If an employee were not so informed, that would be a reckless disregard of the safety rules. It would also be unsafe if drivers were not taught what to do if they lost control of a load. There were approximately 20 opportunities for Green to have a safety meeting, and if Green did not have a chance to have any safety meetings, that would be an utter disregard for the safety of Green and others on the road.

¶ 9 Savinder Singh, also known as Savi,[1] testified that he was a yard supervisor at Pan-Oceanic in August 2012 and instructed Green and other employees on various aspects of operating trucks.

---

[1] Savi was referred to as "Salvi" during Green's testimony.

He testified as follows. Savi "told [Green] the basic way" to properly situate a load on a trailer, but Green "knew pretty much how to as well, and I've seen him." Also, Green was trained to properly load a piece of equipment on the back of a trailer. After 60 days on the job, Green seemed familiar with the procedure for loading and unloading a trailer. Savi had not personally been in a situation where a load became insecure and he lost control of a load. Also, Savi himself was not taught how to handle a load that was in distress.

¶ 10    Savi also testified about his conversation with Green and Patten on the day of the collision. Savi denied that Green told him that the load was crooked or diagonal. Instead, Green told Savi that the load looked funny, and Savi did not ask what Green meant by that. At the time of the call, Savi was multitasking. After speaking to someone at Patten, Savi told Green to let Patten load the equipment and make sure it was secure. Savi denied that he told Green it was safe to drive the load and noted that he regularly told Green to "drive safe."

¶ 11    Via a videotaped evidence deposition, one of plaintiff's treating doctors testified about plaintiff's injuries and treatment.

¶ 12    The parties agreed to bifurcate the proceedings. In the first phase, the jury would decide liability and compensatory damages. Depending on the answers to special interrogatories, the jury would consider punitive damages in a second phase.

¶ 13    At a jury instruction conference, the court and the parties discussed Illinois Pattern Jury Instructions, Civil, No. 50.01 (approved Dec. 8, 2011) (hereinafter IPI Civil), which applies when both the principal and agent are sued and there is no issue as to agency. The court noted that the last sentence of the instruction would read, "if you find that—and it will give Lavonta Green—is not liable, then you must find that Pan-Oceanic is not liable *** if it's strictly responding superior." Defense counsel responded, "Exactly," but plaintiff's counsel disagreed and asserted that plaintiff

had independent allegations against Pan-Oceanic. Plaintiff's counsel suggested IPI Civil No. 50.02, which applied when the principal was sued but not the agent. The court maintained that IPI Civil No. 50.01 was the proper instruction because the principal and agent were both parties. Plaintiff's counsel apologized. Upon inquiry, defense counsel confirmed that he did not object to IPI Civil No. 50.01.

¶ 14    The matter of Green's and Pan-Oceanic's liability being linked also came up during defense counsel's request for separate verdict forms for Green and Pan-Oceanic. Defense counsel stated that Green and Pan-Oceanic were sued separately and Green was a separate defendant. The following exchange ensued about whether separate forms were proper where Green was Pan-Oceanic's agent:

>"MR. BROWN [(PLAINTIFF'S COUNSEL)]: He's been sued individually and as agent for Pan-Oceanic.
>
>MR. SUBER [(DEFENSE COUNSEL)]: Well, he's been sued as an agent, but he's also been sued individually.
>
>THE COURT: In any event, you're going to tender separate verdict forms as to each defendant. We're going to [address] that. But that is my concern, if you're admitting, what you are, that Green is your agent at the time of the occurrence *** there is no conceivable way that you can find against Green and not against Pan-Oceanic.
>
>MR. BROWN: Right.
>
>THE COURT: In theory, because there is this failure to adequately train and theory you can find [against] Pan-Oceanic, I guess, but not Green. I don't know. It

seems to me they rise and fall together because you've admitted he's your agent. He's acting within his scope of his agency at the time of the occurrence."

¶ 15    The court and the parties later returned to IPI Civil No. 50.01, discussing as follows:

"THE COURT: [N]ormally, I really think this is the way to go, this 50.01 ***, but my concern is that Lavonta Green *** is an agent of Pan-Oceanic. That is undisputed. So if you find against Lavonta, you find against Pan-Oceanic.

MR. SUBER [(DEFENSE COUNSEL)]: And adversely.

THE COURT: Right. By my *** concern is we've got these separate allegations against Pan-Oceanic *** in other words, it's conceivable—

MR. BROWN [(PLAINTIFF'S COUNSEL)]: Yes, it is.

THE COURT: It's conceivable that you could find against Pan-Oceanic on the second count for negligent acts that were acts that—on a theory other than responding as superior [*sic*]."

The court reserved ruling on IPI Civil No. 50.01. The court added that plaintiff would bring some alternative instructions and invited defense counsel to tender an alternative instruction as well.

¶ 16    The proposed special interrogatories asked whether Green and Pan-Oceanic acted with reckless disregard. The court noted that the terms reckless or willful and wanton needed to be defined. Plaintiff's counsel agreed and stated he would "absolutely include it and we will add it." The parties disagreed about how broadly or specifically the special interrogatories should be phrased.

¶ 17    Later, defense counsel tendered IPI Civil No. B21.02, pertaining to the burden of proof for negligence where there is one plaintiff and one defendant and contributory negligence is an issue. Plaintiff's counsel objected, and the trial court reserved its ruling.

¶ 18    Returning to the jury instructions the next day, plaintiff's counsel suggested using three verdict forms: (1) for plaintiff and against Green and Pan-Oceanic, (2) for plaintiff and against Pan-Oceanic but not Green, and (3) against plaintiff and for Green and Pan-Oceanic. Defense counsel reasserted that Green should be given his own verdict form because he was sued both as an individual and as an employee of Pan-Oceanic. The court stated it would "give it over defendants' objection because any allegations and negligence against Mr. Green *** are related to his work as an employee of Pan Oceanic and agency is not disputed."

¶ 19    Defense counsel noted at one point that he thought there was an instruction that "any negligence of Pan Oceanic is negligence against *** Green and vice versa." The court responded, "I think it's any negligence of Green, that Green is an agent of Pan Oceanic. *** There were some separate allegations against Pan Oceanic in terms of *** properly trained, failure to properly hire, and so forth." Defense counsel again asserted that there should be separate verdict forms for each defendant. The court stated, "In the sense that you've admitted agency, there's no conceivable way the jury could find for Green and against Pan Oceanic because you've admitted he's your agent."

¶ 20    In reviewing the jury instructions, the court noted that IPI Civil No. 50.01 would be given, and there was no objection. A brief discussion on an instruction for the burden of proof was held:

"THE COURT: Defendants' 8, burden of proof, 21.01.

MR. SUBER [(DEFENSE COUNSEL)]: The plaintiff has the burden of proof?

THE COURT: Yes—No. When I say the party has the burden of proof on any proposition or use the expression if you find or if you decide."

The issues instructions for negligence were given over defendants' objection. The parties and the court had the following exchange about the special interrogatories, about which there had been continued disagreement about how broadly or specifically they should be worded:

"MR. BROWN [(PLAINTIFF'S COUNSEL)]: It seems to me that if we just say broadly did you find that any of La Vonta Green's conduct was done in reckless disregard for the safety of others.

THE COURT: I think that's perfect.

MR. SUBER [(DEFENSE COUNSEL)]: That's great.

MR. BROWN: So then I can argue everything, and we don't have to worry. And the same with Pan Oceanic.

THE COURT: Perfect.

MR. BROWN: Any of their conduct.

THE COURT: Now we're in business.

MR. SUBER: That's a great idea."

¶ 21 Subsequently, the parties presented their closing arguments to the jury. In his closing, plaintiff's counsel contended in part that it was reckless for Green to take the load on the road because the risks of harm to others were so great. Further, Pan-Oceanic did not care about what happened to drivers or the public. Plaintiff's counsel stated that, "for willful and wanton, we're not asking for any money. There just has to be a finding." Counsel recited a definition for willful and wanton conduct and added that "[i]t has nothing to do with intentionality. It has to do with a higher degree of negligence that arises to recklessness."

¶ 22 As part of his closing, defense counsel explained the burden of proof, stating that it meant "that you have to be provided a certain quality of information *** so that when you go back to that jury room and you make your decision you're not all collectively scratching your heads saying, Well, what did he mean by that and where is there evidence of this and where is there evidence of that." Defense counsel added that if the jury found, after considering the evidence, that plaintiff

had not carried his burden of proof, then the jury must decide for defendants. Also, if the jury found that there were a lot of questions about plaintiff's proof, "then in order to be fair, you have to decide that there's not enough evidence or not enough quality of evidence, there's not enough quantity of evidence such that you could be fair to both parties. So that's the touchstone of your decision based on burden of proof." Turning to the details of the incident, defense counsel asserted that Patten was at fault. Further, Green did what any other person under the circumstances would be expected to do. Counsel also suggested that Savi Singh reasonably relied on Patten's assurances about the load. Even if Green was negligent, his conduct did not rise to a level of utter indifference or conscious disregard for the safety of others. There was never an intent to hurt anyone and never an intent "that would be reckless under these circumstances."

¶ 23    In rebuttal, plaintiff's counsel noted that defense counsel had not advanced a single defense about Pan-Oceanic's training or education of Green. Counsel also stated that it would be understandable if the jury found Green careless "and not in utter disregard," but "under no circumstances should Pan Oceanic be allowed to walk in this case."

¶ 24    After closing arguments, the jury was excused for the day, and the parties and the court went over the instructions a final time. The court wanted to "make sure we've got everything" and invited each side to go through the instructions and "see if you think anything is missing." The court went through each instruction. The court read the submitted version of IPI Civil No. 50.01 as follows: "Defendants are sued as principal and agent of Defendant. Pan Oceanic as principal defines [Green's] agent. If [Green] is liable, then you must find Pan Oceanic is also liable." Neither party objected. Turning to the issues instructions, the court told the parties to "[m]ake sure we've got both issues," and plaintiff's counsel noted that there was one issues instruction for Green and

one for Pan-Oceanic. The court read the issues instructions to both parties. Defense counsel confirmed that the special interrogatories were "what we all agreed on as to form."

¶ 25    The next day, the court instructed the jury in part as follows:

> "When I say that a party has the burden of proof on any proposition, or use the expression 'if you find,' or 'if you decide,' I mean you must be persuaded, considering all the evidence in the case, that the position on which he has the burden of proof is more probably true than not true.
>
> The defendant Pan-Oceanic Engineering Company, Inc. is a corporation and can only act through its officers and employees. Any act or omission of an officer or employee within the scope of his employment is the action or omission of the defendant corporation.
>
> The defendants are sued as principal and agent. The defendant Pan-Oceanic Engineering Company, Inc., is the principal and the defendant Lavonta Green is its agent. If you find that the defendant Lavonta Green is liable, then you must find that the defendant Pan-Oceanic Engineering Company, Inc., is also liable.
>
> It was the duty of the defendants before and at the time of the occurrence to refrain from willful and wanton conduct which would endanger the safety of the plaintiff.
>
> When I use the expression 'willful and wanton conduct' I mean a course of action which shows an utter indifference to or conscious disregard for the safety of others.

* * *

The plaintiff claims that he was injured and sustained damage and that the defendant Lavonta Green was negligent in one or more of the following respects:

a. Failed to acknowledge and/or understand the risks associated with hauling an improperly situated trailer on the rear of the skid steer he was operating;

b. Failed to properly secure the skid steer on the rear of the truck;

c. Operated the truck on the highway with an unsafe, improperly situated skid steer on it, when he knew, or should have known that it was unsafe for the others on the highway to do so;

d. Drove too fast for the conditions;

e. Failed to properly operate and control his vehicle given existing conditions;

f. Failed to keep the skid steer and the load under control;

g. Took the load on the highway when he knew or should have known the load should have been rejected by him given its unsafe condition;

h. Improperly attempted to stop the truck while travelling down the highway;

The defendants, Lavonta Green and Pan-Oceanic Engineering Company, Inc. deny that defendant Lavonta Green was negligent in doing any of the things claimed by the plaintiff and deny that any claimed act or omission on the part of defendant Lavonta Green was a proximate cause of the plaintiff's claimed injuries. The defendants further deny that the plaintiff was injured or sustained damages to the extent claimed.

The plaintiff claims that he was injured and sustained damage, and that the defendant Pan-Oceanic Engineering Company, Inc. was negligent in one or more of the following respects:

a. Failed to train Lavonta Green about the risks of carrying an unsafe load;

b. Failed to train Lavonta Green in the hazards associated with driving an improperly situated load on the highway;

c. Failed to implement and/or follow proper policies and procedures regarding proper placement of a load;

d. Ordered and/or permitted Lavonta Green to take the load on the highway after Pan-Oceanic Engineering Company, Inc. knew, or should have known that it was in an unsafe state;

e. Accepted information from personnel at Patten Industries;

f. Failed to reject the load and prevent it from leaving Patten Industries;

g. Failed to train Lavonta Green regarding properly braking.

The defendant Pan-Oceanic Engineering Company, Inc. denies that it was negligent in doing any of the things claimed by the plaintiff and denies that any claimed act or omission on the part of the defendant was a proximate cause of the plaintiff's claimed injuries.

The defendant further denies that the plaintiff was injured or sustained damages to the extent claimed.

* * *

If you find for [plaintiff] and against Lavonta Green and Pan-Oceanic Engineering Company, Inc., then you should use Verdict Form A.

If you find for [plaintiff] and against Pan-Oceanic Engineering Company, Inc., but not against Lavonta Green, then you should use Verdict Form B.

If you find for Lavonta Green and Pan-Oceanic Engineering Company, Inc., and against [plaintiff], then you should use Verdict Form C."

The jury was also given two special interrogatories, to which the jury had to answer "yes" or "no." The first asked, "Do you find that defendant Lavonta Green acted with reckless disregard for the safety of others?" The second asked, "Do you find that defendant Pan-Oceanic Engineering Company, Inc. acted with reckless disregard for the safety of others?"

¶ 26    After deliberating, the jury returned verdict form B, finding for plaintiff and against Pan-Oceanic, but not against Green. The jury awarded plaintiff $163,227.45 in compensatory damages. The jury answered "No" to the special interrogatory that asked whether Green acted with reckless disregard and answered "Yes" to the special interrogatory that asked whether Pan-Oceanic acted with reckless disregard.

¶ 27    The proceedings turned to the punitive damages phase, where Gulzar Singh testified about Pan-Oceanic's financial position. After the jury was instructed and deliberated, it returned a punitive damages award of $1 million against Pan-Oceanic.

¶ 28                              B. Posttrial Proceedings

¶ 29    On August 14, 2017, Pan-Oceanic filed a posttrial motion that sought a judgment *n.o.v.* and new trial based on several alleged errors and asserted in part as follows. Because Pan-Oceanic admitted agency, its liability under the theories of negligent training, supervision, and entrustment could not exceed that of Green. So, the verdict in favor of Green meant that Pan-Oceanic could

not be liable for negligence in training, supervising, or entrusting Green with the vehicle. Further, the court erred in striking the last sentence of IPI Civil No. 50.01, which would have advised the jury that if it found for Green on negligence, it must also find that Pan-Oceanic was not negligent. Also, the special interrogatories were confusing and misleading, in that they contained different language than the definition of willful and wanton conduct in the instructions. Further, the verdicts and answers to the special interrogatories were legally inconsistent, mutually exclusive, and contrary to the manifest weight of the evidence. Pan-Oceanic also asserted that the court failed to instruct the jury as to the burden of proof for the counts that alleged negligence against Pan-Oceanic and willful and wanton conduct against Green and Pan-Oceanic. And plaintiff failed to tender and the court failed to instruct the jury as to the issues in the willful and wanton count of the complaint, which would have set forth what specific acts constituted willful and wanton misconduct beyond ordinary negligence.

¶ 30    In response, plaintiff maintained in part that there was no error in the form of IPI Civil No. 50.01 that was given because plaintiff made an independent charge of negligence against Pan-Oceanic. That independent charge was based on Pan-Oceanic's direct conduct of failing to train Green and instructing him to proceed despite questions about the safety of the load. Plaintiff also asserted that the special interrogatories were proper and Pan-Oceanic waived any error based on the absence of instructions.

¶ 31    On January 11, 2019, the court entered a written order that denied Pan-Oceanic's posttrial motion. The court rejected Pan-Oceanic's argument that, because it admitted agency, its liability could not exceed that of Green. The allegations of negligence and willful and wanton conduct against Pan-Oceanic focused on fault attributable solely to Pan-Oceanic for its own conduct. The allegations of negligent training and supervision were a separate, nonderivative tort. Also, Pan-

Oceanic waived its objection to IPI Civil No. 50.01 because it did not object at trial and tender an alternative instruction. The court also found that Pan-Oceanic forfeited and/or waived any objections to the absence of instructions related to the special interrogatories, the burden of proof, and the issues for willful and wanton conduct. The court noted that the parties' closing arguments addressed the burden of proof and the definition of reckless disregard.

¶ 32     Pan-Oceanic timely appealed.

¶ 33                                 II. ANALYSIS

¶ 34     Pan-Oceanic asserts that this court should enter a judgment *n.o.v.* or remand for a new trial based on several errors. We find the errors related to the jury instructions and special interrogatories to be dispositive and will address each error in turn.

¶ 35                           A. IPI Civil No. 50.01

¶ 36     Pan-Oceanic contends that the trial court erred by omitting the last sentence of IPI Civil No. 50.01, which would have instructed the jury that if it found for Green, it must also find for Pan-Oceanic. Pan-Oceanic argues that because it admitted agency, plaintiff could not maintain an independent charge of negligence against it.

¶ 37     IPI Civil No. 50.01 states as follows:

> "The defendants are sued as principal and agent. The defendant [principal's name] is the principal and the defendant [agent's name] is [his] [its] agent. If you find that the defendant [agent's name] is liable, then you must find that the defendant [principal's name] is also liable. However, if you find that [agent's name] is not liable, then you must find that [principal's name] is not liable."

The instruction is proper when agency is not at issue (IPI Civil No. 50.01, Notes on Use), and agency was not at issue here. Further,

"[i]f by the pleadings and evidence there is an issue of fact as to the liability of the principal for his own acts independent of acts of the agent, then a separate instruction appropriate to such independent basis of liability should also be used and the last sentence of this instruction should be modified or stricken accordingly."

IPI Civil No. 50.01, Notes on Use.

The instruction is not limited to tort cases. IPI Civil No. 50.01, Comment.

¶ 38    The version of IPI Civil No. 50.01 that was given at trial omitted the last sentence and stated:

"The defendants are sued as principal and agent. The defendant Pan-Oceanic Engineering Company, Inc. is the principal and the defendant Lavonta Green is its agent. If you find that the defendant Lavonta Green is liable, then you must find that the defendant Pan-Oceanic Engineering Company, Inc., is also liable."

¶ 39    At various points below, both parties and the court seemed to have labored under the misunderstanding that Green and Pan-Oceanic could be treated separately. Yet, Illinois case law directs that their liability was tied together in this instance, and so the last sentence of IPI Civil No. 50.01 should have been included.

¶ 40    The function of jury instructions is to convey to the jury the correct principles of law that apply to the submitted evidence. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 507 (2002). Jury instructions "must state the law fairly and distinctly and must not mislead the jury or prejudice a party." (Emphasis omitted.) *Id.* Whether the applicable law was conveyed accurately is a question of law that is reviewed *de novo*. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13. "A faulty jury instruction does not require reversal unless the error results in serious prejudice to the party's right to a fair trial." *Doe v. University of Chicago Medical Center*, 2014 IL App (1st) 121593, ¶ 87.

¶ 41    To review, count I of plaintiff's complaint asserted negligence against Green, and count II asserted negligence against Pan-Oceanic. Count III sought punitive damages against Green and Pan-Oceanic on the basis that their acts or omissions demonstrated a reckless disregard for the safety of others. Pan-Oceanic admitted that Green was its employee. There is no dispute that Pan-Oceanic was liable for Green's torts under the theory of *respondeat superior.* See *Hoy v. Great Lakes Retail Services, Inc.*, 2016 IL App (1st) 150877, ¶ 24 (under theory of *respondeat superior*, employer may be liable for the torts of an employee when the employee commits the tort within the scope of his employment). At trial, negligence against Pan-Oceanic was framed in terms of failing to train Green in various respects and ordering and/or permitting Green to take the load, among other allegations.

¶ 42    In Illinois, a plaintiff who is injured in a motor vehicle accident cannot maintain a claim for negligent hiring, negligent retention, or negligent entrustment against an employer where the employer admits responsibility for the conduct of the employee under *respondeat superior*. *Gant v. L.U. Transport, Inc.*, 331 Ill. App. 3d 924, 928 (2002). A negligent entrustment claim is derivative of the employee's negligence. *Id.* The employer is responsible for all of the fault attributed to the negligent employee, but only the fault attributed to the negligent employee. *Id.* at 929. As such, once an employer admits responsibility for its employee's negligence, "then any liability alleged under an alternative theory, such as negligent entrustment or negligent hiring, becomes irrelevant and should properly be dismissed." *Neuhengen v. Global Experience Specialists, Inc.*, 2018 IL App (1st) 160322, ¶ 84 (citing *Neff v. Davenport Packing Co.*, 131 Ill. App. 2d 791, 792-93 (1971)). This principle applies even though claims such as negligent hiring and retention are based on the employer's negligence in hiring or retaining the employee and not the employee's wrongful act. *Gant*, 331 Ill. App. 3d at 927.

¶ 43    Thus, once Pan-Oceanic admitted liability under *respondeat superior*, the jury should not have been permitted to find that Pan-Oceanic could be independently negligent. Plaintiff tries to avoid this outcome by asserting that the case did not go to the jury under negligent hiring, retention, or entrustment but only under the separate and distinct theory of negligent training, which is not derivative of the employee's negligence.

¶ 44    No Illinois cases have directly addressed whether negligent training should be treated differently than negligent entrustment. In *National R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 2014 IL App (5th) 130257, ¶ 16, the court found that a negligent training claim could proceed where a defendant had not conceded responsibility under *respondeat superior* and had no liability under *respondeat superior*. But that does not answer the question of whether an employer could be independently liable for negligent training where the employer admits liability under *respondeat superior*. Looking elsewhere, jurisdictions that take the same approach as Illinois, disallowing direct negligence claims against the employer where the employer admits liability under *respondeat superior*, do not mention an exception for negligent training claims. See *Greene v. Grams*, 384 F. Supp. 3d 100, 104 (D.D.C. 2019) (direct negligence claims are barred once employer concedes vicarious liability for the negligence of its employee); *Ferrer v. Okbamicael*, 2017 CO 14M (where the plaintiff asserted negligence against the employee and direct negligence claims against the employer that included negligent training and where employer admitted vicarious liability, all direct negligence claims against the employer were barred; collecting cases that bar direct negligence claims where the employer admits vicarious liability). We decline to treat negligent training differently from the other negligence claims that are barred once an employer admits liability under *respondeat superior*.

¶ 45    Also, plaintiff's reliance on *Longnecker v. Loyola University Medical Center*, 383 Ill. App. 3d 874 (2008), does not convince us that Pan-Oceanic could be independently negligent. In that case, the court rejected the claim that a doctor had to be professionally negligent before a hospital could be institutionally negligent. *Id.* at 894. Institutional negligence is subject to different rules than the negligence at issue here. The *Longnecker* court stated that institutional negligence "does not encompass, whatsoever, a hospital's responsibility for the conduct of its *** medical professionals." (Internal quotation marks omitted.) *Id.* That is not the case when an employer admits liability under *respondeat superior*.

¶ 46    As the trial court noted at one point, the claims against Green and Pan-Oceanic had to rise and fall together. Pan-Oceanic could not be negligent unless Green was found negligent. The given version of IPI Civil No. 50.01 allowed the jury to find against Pan-Oceanic even if Green was not liable, which was an incorrect statement of the law.

¶ 47    The parties and the court initially agreed that the full version of IPI Civil No. 50.01 would be given. Yet, when going over the instructions a final time after closing arguments, the court read a version of IPI Civil No. 50.01 without the last sentence, and neither party objected. A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008). Pan-Oceanic urges this court to find plain error. For the time being, we turn to the other key errors that occurred at trial before we consider whether plain error or another exception to forfeiture applies.

¶ 48                    B. Language of Special Interrogatories

¶ 49    Pan-Oceanic contends that the language used in the special interrogatories was confusing, prejudicial, and inconsistent with the instructions about willful and wanton conduct. Pan-Oceanic

notes that special interrogatory No. 2 asked whether Pan-Oceanic "acted with reckless disregard for the safety of others," but the word "reckless" was not used or defined anywhere in the instructions given during the compensatory phase of the trial. Pan-Oceanic argues that, even if it agreed to the wording of the special interrogatories, any such agreement did not relieve the trial court or plaintiff of the burden to avoid presenting the jury with language that is repetitive, confusing, or misleading.

¶ 50   A special interrogatory tests the general verdict against the jury's determination as to one or more issues of ultimate fact. *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). "A special interrogatory is in proper form if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned." *Id.* Also, a special interrogatory should (1) consist of a single direct question; (2) not be prejudicial, repetitive, misleading, confusing, or ambiguous; and (3) use the same language or terms as the tendered instructions. *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 32.

¶ 51   The special interrogatories submitted to the jury did not use the same language as the tendered instructions. "Reckless" was not defined or even used anywhere in the instructions. The definition of "willful and wanton conduct" did not include the term "reckless." The trial court noted at one point that "reckless" needed to be defined, but that never happened. Still, defense counsel agreed with the language of the special interrogatory, stating, "That's great," and "[t]hat's a great idea."

¶ 52   We are hesitant to find defense counsel's use of the term "reckless" in his closing argument to be a sufficient substitute for including the definition in the instructions. But see *Simmons*, 198 Ill. 2d at 565 (even though court did not define term "dehydration," which was used in special

interrogatory, special interrogatory was proper where dehydration was extensively discussed and defined through expert testimony). In any event, a party cannot complain of an error that it induced the trial court to make or to which he consented. *Brax v. Kennedy*, 363 Ill. App. 3d 343, 350 (2005). Defense counsel endorsed the language of the special interrogatory, and he cannot now challenge that language on appeal. See *Price v. City of Chicago*, 2018 IL App (1st) 161599, ¶ 22 (the plaintiff waived any argument as to the form of the special interrogatory because the plaintiff agreed to its presentation to the jury).

¶ 53                          C. Inconsistent Verdicts and Special Interrogatories

¶ 54    Although Pan-Oceanic waived any objection to the form of the special interrogatory, it did not waive its argument that the general verdict and answers to the special interrogatories were irreconcilable and legally inconsistent. See *LaPook v. City of Chicago*, 211 Ill. App. 3d 856, 864-65 (1991) (a party may waive an objection to the form of a special interrogatory by not specifically challenging it at the jury instructions conference, but not the question of whether the special interrogatory is inconsistent with the general verdict). Pan-Oceanic argues that the finding in special interrogatory No. 2 that it was reckless is inconsistent with the finding that Green was neither negligent nor reckless. Pan-Oceanic asserts that Green's exoneration, combined with the assertion of *respondeat superior*, creates an absolute bar to liability against Pan-Oceanic. According to Pan-Oceanic, the verdicts are irreconcilably inconsistent, and a new trial is required.

¶ 55    Whether two verdicts are inconsistent is a question of law, and so a trial court's order granting or denying a new trial based on a claim of legally inconsistent verdicts is reviewed *de novo*. *Redmond v. Socha*, 216 Ill. 2d 622, 642 (2005). Per the jury's general verdict and answers to the special interrogatories, Pan-Oceanic was found to have acted with reckless disregard, and Green was absolved of liability. A party that acts with reckless disregard for the safety of others

acts willfully and wantonly. *Baumrucker v. Express Cab Dispatch, Inc.*, 2017 IL App (1st) 161278, ¶ 35. Willful and wanton conduct is not an independent tort and is considered an aggravated form of negligence. *Neuhengen*, 2018 IL App (1st) 160322, ¶ 133.

¶ 56    As discussed above, Green's and Pan-Oceanic's liability had to rise and fall together because Pan-Oceanic admitted liability under *respondeat superior*. However, a principal may be found guilty of willful and wanton misconduct even though the agent was only negligent. *Lockett v. Bi-State Transit Authority*, 94 Ill. 2d 66, 73 (1983); see also *Neuhengen*, 2018 IL App (1st) 160322, ¶ 113 ("claims alleging willful and wanton conduct by an employer are not extinguished by an admission of *respondeat superior* liability for the actions of the employee"). The negligence of the employee is a prerequisite for finding the employer willful and wanton where the employer has admitted liability under *respondeat superior*. See *Johnson v. Kirkpatrick*, 11 Ill. App. 2d 214, 218 (1956) (jury acted inconsistently in finding driver not guilty of negligence and owner guilty of negligence, where owner's liability was premised on *respondeat superior*). Here, the jury's findings—that Green was not negligent but Pan-Oceanic acted with an aggravated form of negligence—were legally inconsistent. The trial court should have granted Pan-Oceanic's motion for a new trial for this reason. See *Redmond*, 216 Ill. 2d at 642 (legally inconsistent verdicts must be set aside and a new trial granted).

¶ 57                            D. Missing Burden of Proof Instruction

¶ 58    The legally inconsistent verdicts are sufficient grounds for a new trial. But we will still address other errors with the jury instructions, keeping in mind that error also occurred with respect to IPI Civil No. 50.01. Pan-Oceanic asserts that the jury was not instructed as to the burden of proof, and so the jury was never instructed as to the necessary facts or elements of each cause of action that plaintiff had to prove. Pan-Oceanic contends that the trial court should have given a

modified version of IPI Civil No. B21.02.02 as the burden of proof instruction. That instruction applies where there are alternative negligence and willful and wanton counts against a defendant.

¶ 59    At trial, Pan-Oceanic did not raise the argument that IPI Civil No. B21.02.02 should have been given. Defense counsel tendered IPI Civil No. B21.02, to which plaintiff objected and the court reserved its ruling. At no future point did defense counsel reassert the need for a burden of proof instruction or tender the instruction that Pan-Oceanic now states was proper. A party is required to tender a proper instruction, and it is not the duty of the trial court to prepare or amend instructions or to give an instruction on its own motion. *Williams v. Conner*, 228 Ill. App. 3d 350, 363 (1992). Further, a party who takes the position that the jury should have been instructed differently should have submitted that desired instruction to the trial judge. *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 549 (1984). Pan-Oceanic should have tendered its desired instruction in the trial court but did not, despite having had ample opportunity to do so.

¶ 60    That oversight was significant. "[I]t is essential that jurors receive a definition or description of the applicable burden of proof." (Internal quotation marks omitted.) *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 135 (opinion of McBride, J.). Without a burden of proof instruction, the jury was not told which party had to prove the specific elements of negligence and willful and wanton conduct. Even where the jury is given the general definition of the burden of proof via IPI Civil No. 21.01, as it was here, not including a burden of proof instruction for the causes of action at issue results in the "jury's deliberations, findings, and ultimate decision" being rendered "though an improper scope of analysis." (Internal quotation marks omitted.) *Powell*, 2013 IL App (1st) 082513-B, ¶¶ 132, 135 (opinion of McBride, J.).

¶ 61                                E. Missing Issues Instruction

¶ 62    Compounding the error was that the jury was not given an issues instruction for willful and wanton conduct. Pan-Oceanic maintains that the court should have given a modified version of IPI Civil No. 20.01.01, which delineates the issues where there are negligence and willful and wanton counts. At trial, Pan-Oceanic did not raise the problem that there was no issues instruction for willful and wanton conduct.

¶ 63    Again, Pan-Oceanic should have submitted its desired instruction at trial. See *Auton*, 105 Ill. 2d at 549. And like the missing burden of proof instruction, a missing issues instruction is no small matter. An issues instruction informs the jury of the plaintiff's claims and the defendant's responses. *Howat v. Donelson*, 305 Ill. App. 3d 183, 186 (1999). An issues instruction "must in a clear, concise[,] and comprehensive manner inform the jury as to what material facts must be found to recover or to defeat a recovery." (Internal quotation marks omitted.) *Id.* at 187. Further, an issues instruction tells the jury the points in controversy between the parties and simplifies their task of applying the law to the facts. IPI Civil No. 20.00, Introduction.

¶ 64                            F. Effect of Faulty or Missing Instructions

¶ 65    We are faced with three faulty or missing instructions: the last sentence of IPI Civil No. 50.01, the burden of proof, and the issues for willful and wanton conduct. We do not view each instruction in isolation. Instructions should, in a concise and comprehensive manner, inform the jury of the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict. *Grover v. Commonwealth Plaza Condominium Ass'n*, 76 Ill. App. 3d 500, 508 (1979). "The test is whether, taken as a whole and in series, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." *Williams*, 228 Ill. App. 3d at 364. While the legally inconsistent verdicts alone are cause for a new trial, the state of the jury instructions compels additional comment. See *Dillon*, 199 Ill. 2d at 505 (reviewing court

may override considerations of waiver in furtherance of responsibility to provide a just result and maintain a sound and uniform body of precedent). Jurors are "laypersons who are not trained to separate issues and to disregard irrelevant matters. That is the purpose of jury instructions." *Id.* at 507. The jury here was given a woefully incomplete and inaccurate roadmap with which to weigh the evidence and arrive at a verdict. The attorneys' comments about the burden of proof and references to the issues in closing arguments were not a substitute for clear, concise, and accurate statements of the law that should have been included in the jury instructions. It places too large a burden on the jury to piece together statements in closing arguments as a substitute for jury instructions. In addition to the missing instructions, IPI Civil No. 50.01 as given was incorrect. The instructions, as a whole, did not fairly and correctly state the applicable law, which prevented a fair trial. We reverse and remand for a new trial. In light of our conclusion, we need not address Pan-Oceanic's other claims of error.

¶ 66                                      III. CONCLUSION

¶ 67     For the foregoing reasons, the judgment of the circuit court is reversed, and the matter is remanded for a new trial.

¶ 68     Reversed and remanded.

¶ 69     PRESIDING JUSTICE MIKVA, dissenting:

¶ 70     I respectfully dissent. The majority relies on the doctrine announced in *Gant v. L.U. Transport, Inc.*, 331 Ill. App. 3d 924, 928 (2002), to reverse and remand this case for a new trial because of inconsistent verdicts. In *Gant*, this court held that a plaintiff who is injured in a motor vehicle accident cannot maintain a claim for negligent hiring, negligent retention, or negligent entrustment against an employer where the employer admits responsibility for the conduct of its employee driver under the doctrine of *respondeat superior* because such claims are derivative of

the employee's negligence. *Id.* As we reasoned in *Gant*, once an employer admits responsibility for its employee's negligence under one theory, then any liability alleged under an alternative theory that is also derivative of and dependent on the employee's negligence, such as negligent entrustment or negligent hiring, becomes irrelevant and should be dismissed. Because, under *Gant*, *respondeat superior* remains the only claim, the liability of the employer cannot exceed the negligence of the employee, and the claims rise and fall together. See *id.*

¶ 71    The holding in *Gant*, while it follows a rule that has been adopted in other jurisdictions, has never been endorsed by our supreme court and strikes me as being at odds with several well-reasoned decisions of this court, including *Longnecker v. Loyola University Medical Center*, 383 Ill. App. 3d 874 (2008) (holding a hospital could be liable for its own institutional negligence even where its employee doctor was not negligent) and *Neuhengen v. Global Experience Specialists, Inc.*, 2018 IL App (1st) 160322, ¶¶ 113, 127 (holding that "claims alleging willful and wanton conduct by an employer are not extinguished by an admission of *respondeat superior* liability for the actions of the employee"). Even assuming that the holding in *Gant* is one that we should follow, I believe the majority unnecessarily and unfairly extends application of the rule in that case beyond its principled parameters.

¶ 72    Here, the jury was instructed that, among the bases upon which it could find Pan-Oceanic liable, was if the company either "Failed to implement and/or follow proper policies and procedures regarding proper placement of a load" or "Ordered and/or permitted Lavonta Green to take the load on the highway after [Pan-Oceanic] knew, or should have known that it was in an unsafe state." Neither of these bases was derivative of Lavonta Green's negligence, nor was either of them dependent upon a finding that Mr. Green himself was negligent. Rather, both of these bases of liability rested entirely on the company's own negligence. I see no inconsistency in the

jury's finding that Pan Oceanic was negligent—indeed that it acted willfully and wantonly—with its finding that Mr. Green was not negligent.

¶ 73    Section 2-1201(d) of the Code of Civil Procedure provides that,

"[i]f several grounds of recovery are pleaded in support of the same claim, whether in the same or different counts, an entire verdict rendered for that claim shall not be set aside or reversed for the reason that any ground is defective, if one or more of the grounds is sufficient to sustain the verdict ***." 735 ILCS 5/2-1201(d) (West 2016).

This is a codification of the common-law general verdict rule (see *Moore v. Jewel Tea Co.*, 46 Ill. 2d 288, 294 (1970)) or, as it is referred to by some courts, the "two issue rule" (see, *e.g.*, *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904 (2006)). Section 1201(d) expressly applies when several grounds of recovery are advanced at trial and even one is legally sound and supported by the evidence. 735 ILCS 5/2-1201(d) (West 2016)). By enacting it, the legislature clearly prioritized the upholding of jury verdicts, wherever possible, over the prejudice a losing party may have suffered as a result of a jury's consideration of a legally defective or insufficiently supported theory. Because I conclude that the jury's verdicts in this case were compatible under at least these two theories presented at trial, I would affirm.

¶ 74    While the majority reverses on the basis of inconsistent verdicts, it also notes that the jury instructions were deficient in several respects, one of which was that the jury was not instructed that if it found Mr. Green was not negligent it could not go on to find that Pan-Oceanic was negligent. As the majority acknowledges, however, Pan-Oceanic failed to object to any of these instructions or offer alternative instructions. Our supreme court has made it clear that "[a] party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial

court." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008). Thus, these instructions cannot provide a basis for reversal. Moreover, I believe that the version of IPI Civil No. 50.01 that was given at trial, and which omitted the last sentence of that pattern instruction, was correct because I believe that the jury could properly find, as it did, that Pan Oceanic was liable and Mr. Green was not.

| | |
|---|---|
| **Cite as:** | *McQueen v. Green*, 2020 IL App (1st) 190202 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-L-1050; the Hon. Bridget A. Mitchell, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel G. Suber, of Daniel G. Suber & Associates, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Michael W. Rathsack and Yao O. Dinizulu, both of Chicago, for appellee. |